**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**CASE NO.: 1:25-cv-10191**

PANDALOON LLC,

          Plaintiff,

v.

Hefei Longnew Pet Products Co., Ltd.,
Kunshan Zhongru Pet Products Co., Ltd,
LISM Pet Supplies & Pet Store, MenQI Store,
My Pet Clothing Store, Puppy Colorful Store,
Shop1104760661 Store, YouMe Store Store,
DayoneShop, kisuin, MANON ROSA
(Delivery 7-18 days), Plauere-us, Sister Amy,
guangzhouyichongmaoyiyouxiangongsi,
kong09, MG-efforts, and mintam_59,

          Defendants.

---

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff PANDALOON LLC ("Pandaloon" or "Plaintiff"), by and through its undersigned counsel, brings this complaint against Defendants who are promoting, selling, offering for sale and distributing goods bearing counterfeits and confusingly similar imitations of Plaintiff's Trademarks and Design Patent within this district through internet based e-commerce stores on online marketplace(s), and in support of its claims, alleges as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this action for federal trademark counterfeiting and infringement, false designation of origin, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), Patent infringement pursuant to 35 U.S.C. § 271, The All Writs Act (28 U.S.C. § 1651(a), and the New York General Business Law § 349.

2.      Plaintiff brings this action for willful design patent infringement under 35 U.S.C. §271 committed in violation of the Plaintiff's exclusive rights to make, use, offer to sell, or sell Plaintiff's patented design, within the United States or for importation into the United States any patented design during the term of the patent-in-suit, and for all the remedies available under 35 U.S.C. §§ 283, 284, 285, and 289.

## SUBJECT MATTER JURISDICTION

3.      This court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

4.      This court also has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, and 35 U.S.C. §271.

5.      This court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

## PERSONAL JURISDICTION

6.      Defendants are subject to personal jurisdiction in this district because they purposefully direct their activities toward and conduct business with consumers throughout the United States, including within the state of New York and this district, through internet based e-commerce stores accessible in New York and operating under their Seller IDs.

7.      Defendants are subject to personal jurisdiction in this district because their illegal activities directed towards the state of New York cause Plaintiff injury in New York, and Plaintiff's claims arise out of those activities.

8.      Defendants maintain online internet-based e-commerce stores on online marketplace(s) where Defendants sell a variety of goods to New York residents. New York

residents can access the Defendants' online internet-based e-commerce stores on online marketplace(s) to purchase an endless variety of goods.

9.      New York residents can readily access the Defendants' online internet-based e-commerce stores on online marketplace(s). New York residents can browse goods offered for sale by Defendants that are available to ship directly to homes in New York, and also are available for pickup in New York at different locations.

10.      Defendants target their business activities toward consumers throughout the United States, including within this district. Defendants promote sales on the internet to New York residents through a variety of methods including search engine optimization (SEO) efforts, follow-up emails to New York residents, and banner ads promoting products that direct customers, including New York residents, to additional information on those products.

11.      Defendants secure direct financial benefit from purchases made by New York residents as well as indirect commercial gain from the web traffic and sales generated to New York residents.

12.      A substantial part of the Defendants' revenue derives from their sales to New York customers.

13.      Defendants are subject to personal jurisdiction in this district because their illegal activities directed towards the state of New York cause Plaintiff injury in New York, and Plaintiff's claims arise out of those activities, pursuant to  New York CPLR § 302(a)(1).

14.      Alternatively, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

**VENUE**

15.     Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(3) because

Defendants are subject to the court's personal jurisdiction, are not residents in the United States

and there is therefore no district in which an action may otherwise be brought.

16.     Venue is proper in this court pursuant to 28 U.S.C. § 1391 since Defendants are,

upon information and belief, aliens who are engaged in infringing activities and causing harm

within this district by advertising, offering to sell, selling and/or shipping infringing products to

consumers into this district.

**THE PLAINTIFF**

17.     Plaintiff PANDALOON LLC. is a California limited liability company with an

address at 1020 B ST, Ramona, CA 92065.

18.     PANDALOON is a hilarious pet apparel brand that turns dogs and cats into

walking teddy bears, bunnies, unicorns and other adorable creatures through the sale of its high-

quality pet costumes.

19.      PANDALOON was featured on the popular TV show SharkTank, in which the

brand secured a deal with investor Daymond John. Additionally, PANDALOON videos have

amassed over 700 million views on social media, and the brand has been featured in online

articles published by CNBC, Business Insider, Good Morning America, and The Wall Street

Journal. Consequently, the brand has gained significant international acclaim and recognition.

20.     PANDALOON's products are sold through Pandaloon.com, Amazon.com,

cnbcstore.com, pet stores, and other authorized retailers. Plaintiff offers for sale and sells its

products within the state of New York, including this district, and throughout the United States.

21.     Like many other intellectual property rights owners, Plaintiff suffers ongoing daily and sustained violations of its intellectual property rights at the hands of counterfeiters and infringers, such as defendants herein.

22.     Plaintiff is harmed, the consuming public is duped and confused, and the defendants earn substantial profits in connection with the infringing conduct.

23.     In order to combat the harm caused by the combined actions of Defendants and others engaging in similar infringing conduct, Plaintiff expends significant resources in connection with its intellectual property enforcement efforts, including legal fees and investigative fees.

24.     The explosion of infringement over the Internet has created an environment that requires companies like Plaintiff to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and itself from the ill effects of infringement of Plaintiff's intellectual property rights, including consumer confusion, the erosion of Plaintiff's brand, and the harm to the value of Plaintiff's intellectual property.

## PLAINTIFF'S INTELLECTUAL PROPERTY RIGHTS
## PLAINTIFF'S TRADEMARK RIGHTS

25.     Plaintiff creates and sells pet costumes under two federally registered trademarks: PANDALOON (standard characters), and a trademark consisting of a three-dimensional configuration of two stacked leaves with the word PANDALOON centered on the top leaf (collectively the "PANDALOON Marks"). The PANDALOON Marks are associated with the production of high-quality pet costumes and designs, which are fitted to different types of pets.

26.     Plaintiff is the owner of all rights in and to the PANDALOON Marks for "animal apparel; costumes for animals; dog apparel; clothing for animals; clothing for dogs" under International Class 18 as shown in the table below.

| Mark | Reg. No. | IC | First Use | First Use in Commerce | Reg. Date | Exhibit |
|---|---|---|---|---|---|---|
| PANDALOON | 5311455 | 18 | 4/13/2017 | 4/13/2017 | 10/17/2017 | 1A |
| 3D PANDALOON LEAF MARK | 6870532 | 18 | 4/13/2017 | 4/13/2017 | 10/11/2022 | 1B |

27.     The PANDALOON Marks are valid and registered on the Principal Register of the United States Patent and Trademark Office. Copies of the registration certificates can be seen in Composite **Exhibit 1** attached hereto.

28.     The PANDALOON Mark registered with number 5,311,455 is incontestable pursuant to Section 15 of the Trademark Act, 15 U.S.C. § 1065.

29.     The PANDALOON Marks are used in connection with the manufacture and distribution of Plaintiff's high-quality and unique pet costumes.

30.     The PANDALOON Marks are displayed directly on Plaintiff's products and packaging in clear and distinctive lettering. Shown below are the PANDALOON Marks as they are used on Plaintiff's products and packaging:

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ NEW YORK ◆ TENNESSEE ◆ NEW YORK



31.     The PANDALOON Marks have been used in interstate commerce to identify and distinguish Plaintiff's high-quality and unique pet costumes for an extended period of time. Plaintiff's products sold under the Marks possess innovative visual illusion of a walking stuffed animal, detailed design and composition, luxuriously soft plush quality, a tailored fit that aligns with the pet's body to create the illusion of a front facing teddy bear, and distinctive shapes that create the appearance of a plush toy come to life.

32.     The PANDALOON Marks have been used by Plaintiff long prior in time to Defendants' use of copies of those trademarks.

33.     The PANDALOON Marks have never been assigned or licensed to any of the Defendants.

34.     The PANDALOON Marks are symbols of Plaintiff's quality goods, reputation and goodwill and have never been abandoned.

35.     Plaintiff has carefully monitored and policed the use of the PANDALOON Marks.

36.     Plaintiff has expended substantial time, money and other resources developing, advertising and otherwise promoting the PANDALOON Marks in connection with Plaintiff's products. Plaintiff's average marketing and promotional investments are close to $100,000 per year.

37.     Plaintiff has extensively used, advertised, and promoted the PANDALOON Marks in the United States in association with the sale of high-quality and unique pet costumes.

38.     Plaintiff has spent substantial resources promoting the PANDALOON Marks and pet costumes bearing or sold under those marks.

39.     As a result of Plaintiff's efforts, members of the consuming public readily identify merchandise bearing or sold under the PANDALOON Marks as being high-quality and unique patented pet costumes sponsored and approved by Plaintiff.

40.     Accordingly, the PANDALOON Marks have achieved secondary meaning as identifiers of high-quality and unique pet costumes.

41.     Genuine pet costumes bearing or sold under the PANDALOON Marks are widely advertised and promoted by Plaintiff, its authorized distributors, and unrelated third parties via the Internet.

42.     In addition to online promotion, PANDALOON and its products have received extensive national media coverage, including a feature appearance on ABC's Shark Tank, multiple re-airings on CNBC, and segments on Good Morning America Day and Nat Geo Wild, reaching an estimated audience of over 7 million households. Videos featuring PANDALOON products, created by both Plaintiff and third-party customers, have received over 700 million

views across social media platforms. This substantial television and online exposure has further strengthened consumer recognition of the PANDALOON Marks and reinforced their association with Plaintiff's distinctive pet costume designs.

43.     Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasingly important to Plaintiff's overall marketing and consumer education efforts.

44.     Thus, Plaintiff expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies.

45.     Plaintiff's SEO strategies allow Plaintiff and its authorized retailers to fairly and legitimately educate consumers about the value associated with Plaintiff's products and the goods marked with the PANDALOON Marks.

## PLAINTIFF'S PATENT RIGHTS

46.     Plaintiff's pet costumes possess an ornamental design that is protected under a design patent and registered with the United States Patent and Trademark Office under U.S. Patent No USD 8,063,25S entitled "PET COSTUME" (the "PANDALOON Design Patent"). A true and correct copy of the U.S. Design Patent Registration, registered to Eugenia Judy Chen is attached hereto as **Exhibit 2**. A true and correct copy of an assignment of rights to Plaintiff is attached hereto as **Exhibit 3**.

47.     The PANDALOON Design Patent relates to the ornamental design for a pet costume as shown and described through eight figures, which collectively depict the overall visual appearance, corresponding and ordering in front perspective, front elevational, rear elevational, left, right, top plan, top front perspective, and bottom side views, in which the rear view design is different to the front view and both side views are identical to each other.

48.    The PANDALOON Design Patent was issued on December 26, 2017, has not

expired, and is valid.

49.    Plaintiff complies with the federal patent marking statute, 35 U.S.C. § 287(a). An

example of Plaintiff's patent marking is displayed below:



50.    Plaintiff has never granted authorization to anyone to import, make, use, or sell

unauthorized goods using the PANDALOON Design Patent.

## **DEFENDANTS**

51.    The defendants are the following individuals or entities who are currently known

to the plaintiff only by their Seller ID as follows:

| Company Name Provided Online | Seller Name | Seller ID | Physical Adress Provided Online |
|---|---|---|---|
| Hefei Longnew Pet Products Co., Ltd. | Hefei Longnew Pet Products Co., Ltd. | N/A | Room 505, Block B, Cross-Border E-Commerce Building, Hefei, Anhui, China |
| Kunshan Zhongru Pet Products Co.,Ltd | Kunshan Zhongru Pet Products Co.,Ltd | N/A | Room 2201, Building 12, Hupan Linyu Garden, Bacheng Town, Suzhou, Jiangsu, China |

| Company Name Provided Online | Seller Name | Seller ID | Physical Adress Provided Online |
|---|---|---|---|
| Linyi Fengkun Pet Supplies Room (Sole Proprietorship) | LISM Pet Supplies & Pet Store | 1104740502 | Shandong Province, Linyi City, Tancheng County, No. 133, Group 3, Sanxing Village, Matou Town, 371322, CN |
| Yiwu Mengqi Pet Products Co., Ltd | MenQI Store | 1104702702 | CN, Zhejiang Province, Jinhua City, Yiwu City, 2nd floor, Building 6, 253 Shenzhou Road, Houzhai Street, 330781 |
| Suqian Fanjing E-Commerce (Sole Proprietorship) | My Pet Clothing Store | 1104632664 | CN, Room 302, Building 4, Platinum Meiyu, Suqian City, Sucheng District, Jiangsu Province, 321302 |
| Ningbo Sanqi Electronic Commerce Co., Ltd. | Puppy Colorful Store | 912152548 | Room 112, Building 10, Lane 21, 689, Changxing Road, Jiangbei District, Ningbo City, Zhejiang Province, China (Business Trusteeship), 6500 315000 |
| Xiamen Xinxiang Bo Trading Co., Ltd. | Shop1104760661 Store | 1104760661 | CN, Room 418, No. 75 Hu 'an Road, Huli District, Xiamen City, Fujian Province, 350206 |
| Jiaxing Changli Trading Co., Ltd | YouMe Store Store | 1102893928 | CN, Zhejiang Province, Jiaxing City, Xiuzhou District, Xiuzhou New District Haojia Home Shopping Plaza Main Building 13270-1,330411 |

| Company Name Provided Online | Seller Name | Seller ID | Physical Adress Provided Online |
|---|---|---|---|
| shenzhenshichurikeji youxiangongsi | DayoneShop | A23SUMST9IQBG2 | 新安街道兴东社区71区厂房1栋润基大厦511深圳市广东省518000 CN |
| Shen zhen shi jun bing ke ji you xian gong si | kisuin | A3CS6Y9AMOAQQY | Room C52, 2nd Floor, Yingbo Office Building, No. 61, Donghuan 2nd Road, Fukang Community, Longhua Subdistrict, Shenzhen, Guangdong, 518110 CN |
| Anjiwuyidianzishang wuyouxiangongsi | MANON ROSA (Delivery 7-18 days) | A1Y5WWLO5NBM7B | Building 11, No. 1115 Fenghuang Road, Changshuo Subdistrict, Anji, Huzhou, Zhejiang, 313300 CN |
| SICHUAN DAJIARUI KEJI YOUXIAN GONGSI | Plauere-us | AEQ3SCMWHJID8 | 1F, No. 41, Building 5, Donghua 1st Road, Chengdu, Sichuan 610051, China |
| gaohongyan | Sister Amy | A1L6OCONEWMNTB | Room 503, Building 23, Lane 600, Jiayuguan Road, Shanghai, Jiading District, Shanghai 201812 CN |
| guangzhouyichongmaoyiyouxiangongsi | guangzhouyichongmaoyiyouxiangongsi | A2LY4AJ4RHTZJB | 白云区齐富路1号513-B378房广州市广东510000CN |
| kong09 | kong09 | 21614661 | China |
| N/A | MG-efforts | mg-efforts | Japan |
| N/A | mintam_59 | mintam59 | Japan |

52.     Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

53.     Defendants are individuals and/or business entities, each of whom, upon information and belief, either resides and/or operates in foreign jurisdictions, redistributes products from the same or similar sources in those locations, and/or ships their goods from the same or similar sources in those locations to shipping and fulfillment centers within the United States to redistribute their products from those locations.

54.     Defendants are engaged in business in New York but have not appointed an agent for service of process.

55.     Upon information and belief, Defendants have registered, established or purchased, and maintained their Seller IDs.

56.     Defendants target their business activities toward consumers throughout the United States, including within this district, through their simultaneous operation of commercial Internet based e-commerce stores via the Internet marketplace websites under the Seller IDs.

57.     Defendants are the past and present controlling forces behind the sale of products infringing Plaintiff's intellectual property rights as described herein operating and using at least the Seller IDs.

58.     Defendants directly engage in unfair competition with Plaintiff by advertising, offering for sale, and selling goods infringing Plaintiff's intellectual property rights to consumers within the United States and this district through Internet based e-commerce stores using, at least, the Seller IDs and additional names, websites, or seller identification aliases not yet known to Plaintiff.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ NEW YORK ◆ TENNESSEE ◆ NEW YORK

59.     Defendants purposefully direct some portion of their illegal activities towards consumers in the state of New York through the advertisement, offer to sell, sale, and/or shipment of infringing goods into the State.

60.     Upon information and belief, Defendants may have engaged in fraudulent conduct with respect to the registration of the Seller IDs by providing false and/or misleading information to the marketplace where they offer to sell and/or sell during the registration or maintenance process related to their respective Seller IDs.

61.     Upon information and belief, many Defendants registered and maintained their Seller IDs for the sole purpose of engaging in illegal counterfeiting activities.

62.     Upon information and belief, Defendants will likely continue to register or acquire new seller identification aliases for the purpose of selling and offering for sale counterfeits and infringements of Plaintiff's intellectual property rights unless preliminarily and permanently enjoined.

63.     Defendants use their Internet-based businesses to infringe the intellectual property rights of Plaintiff and others.

64.     Defendants' business names, i.e., the Seller IDs, associated payment accounts, and any other alias seller identification names or e-commerce stores used in connection with the sale of counterfeits and infringements of Plaintiff's intellectual property rights are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiff.

65.     Upon information and belief, at all times relevant hereto, Defendants had actual or constructive knowledge of Plaintiff's intellectual property rights, including Plaintiff's right to use and license such copyrights.

## **JOINDER OF DEFENDANTS IN THIS ACTION IS PROPER**

66.     Defendants are promoting, selling, offering for sale and distributing goods bearing counterfeits and confusingly similar imitations of Plaintiff's intellectual property within this district.

67.     Joinder of all Defendants is permissible based on the permissive party joinder rule of Fed. R. Civ. P. 20(a)(2) that permits the joinder of persons in an action as Defendants where any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action.

68.     Joinder of the defendants is permitted because Plaintiff asserts rights to relief against these Defendants jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and common questions of law or fact will arise in the action.

69.     Joinder of the defendants serves the interests of convenience and judicial economy, which will lead to a just, speedy, and inexpensive resolution for Plaintiff, Defendants, and this Court.

70.     Joinder of the Defendants will not create any unnecessary delay nor will it prejudice any party. On the other hand, severance is likely to cause delays and prejudice Plaintiff and Defendants alike.

71.     Joinder of the Defendants is procedural only and does not affect the substantive rights of any Defendant.

72.     Plaintiff's claims against the Defendants are all transactionally related.

73.     Plaintiff is claiming counterfeiting and piracy against Defendants of Plaintiff's intellectual property rights.

**SRIPLAW**
California ◆ Georgia ◆ New York ◆ Tennessee ◆ New York

74.     The actions of all Defendants cause indivisible harm to Plaintiff by Defendants' combined actions engaging in similar infringing conduct when each is compared to the others.

75.     All Defendants' actions are logically related. All Defendants are all engaging in the same systematic approach of establishing online storefronts to redistribute illegal products from the same or similar sources while maintaining financial accounts that the Defendants can easily conceal to avoid any real liability for their actions.

76.     Upon information and belief, all Defendants are located in foreign jurisdictions, mostly China.

77.     All Defendants undertake efforts to conceal their true identities from Plaintiff in order to avoid detection for their illegal counterfeiting activities.

78.     All Defendants have the same or closely related sources for their infringing products with some sourcing from the same upstream source and others sourcing from downstream sources who obtain infringing products from the same upstream sources.

79.     All Defendants take advantage of a set of circumstances that the anonymity and mass reach the internet affords to sell infringing goods across international borders and violate Plaintiff's intellectual property rights with impunity.

80.     All Defendants have registered their Seller IDs with a small number of online platforms for the purpose of engaging in counterfeiting.

81.     Defendants operate online stores that offer shipping to the United States, including New York, and accept payment in U.S. dollars.

82.     All Defendants use payment and financial accounts associated with their online storefronts or the online platforms where their online storefronts reside.

83.     All Defendants use their payment and financial accounts to accept, receive, and deposit profits from their infringing activities.

84.     All Defendants can easily and quickly transfer or conceal their funds in their use payment and financial accounts to avoid detection and liability in the event that the Plaintiff's anti-counterfeiting efforts are discovered or Plaintiff obtains a monetary award.

85.     All Defendants violated one or more of the Plaintiff's intellectual property rights in the United States by the use of common or identical methods.

86.     All Defendants understand that their ability to profit through anonymous internet stores is enhanced as their numbers increase, even though they may not all engage in direct communication or coordination.

87.     The Defendants are operating multiple internet storefronts and online marketplace seller accounts using different Seller IDs. As a result, there are more Seller IDs than there are Defendants, a fact that will emerge in discovery.

88.     Defendants' business names, i.e., the Seller IDs, associated payment accounts, and any other alias seller identification names or e-commerce stores used in connection with the sale of infringements of Plaintiff's intellectual property rights are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiff.

89.     Defendants are using infringements of Plaintiff's intellectual property rights to drive Internet consumer traffic to their e-commerce stores operating under the Seller IDs, thereby increasing the value of the Seller IDs and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

90.     Defendants, through the sale and offer to sell infringing products, are directly, and unfairly, competing with Plaintiff's economic interests in the state of New York and causing Plaintiff harm and damage within this jurisdiction.

91.     The natural and intended byproduct of Defendants' logically related actions is the erosion and destruction of the goodwill associated with Plaintiff's intellectual property rights and the destruction of the legitimate market sector in which it operates.

92.     Upon information and belief, at all times relevant hereto, Defendants had actual or constructive knowledge of Plaintiff's intellectual property rights, including Plaintiff's exclusive right to use and license such intellectual property rights.

## DEFENDANTS' INFRINGING ACTIVITIES

93.     Defendants are promoting, advertising, distributing, selling, and/or offering for sale cheap copies or imitations of Plaintiff's registered trademarks and patent in interstate commerce that are infringements of Plaintiff's intellectual property rights (the "Infringing Goods") through at least the Internet based e-commerce stores operating under the Seller IDs.

94.     Defendants' counterfeit and infringing products reproduce the main design/ornamental features of the PANDALOON Patent, as is shown in the Claim Chart attached hereto as **Exhibit 4**.

95.     Defendants are using infringements of Plaintiff's intellectual property to initially attract online customers and drive them to Defendants' e-commerce stores operating under the Seller IDs.

96.     Plaintiff has used the Marks and Patent extensively and continuously before Defendants began offering goods bearing or using unauthorized versions of Plaintiff's Marks and Patent.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ NEW YORK ◆ TENNESSEE ◆ NEW YORK

97.    Defendants, upon information and belief, are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Infringing Goods without authority to use the Marks or Patent.

98.    Defendants advertise their e-commerce stores, including their Infringing Goods offered for sale, to the consuming public via e-commerce stores on, at least, one Internet marketplace website operating under, at least, the Seller IDs.

99.    In so advertising their stores and products, Defendants improperly and unlawfully use reproductions or versions of the Marks or Patent without Plaintiff's permission.

100.    As part of their overall infringement scheme, most Defendants are, upon information and belief, concurrently employing and benefitting from substantially similar, advertising and marketing strategies based, in large measure, upon an illegal use Plaintiff's intellectual property.

101.    Specifically, Defendants are using infringements of the Marks and Patent in order to make their e-commerce stores selling illegal goods appear more relevant and attractive to consumers searching for both Plaintiff's goods and goods sold by Plaintiff's competitors online.

102.    By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods.

103.    Defendants are causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill

associated with Plaintiff's business and its intellectual property assets, and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers via the Internet.

104.    Defendants are concurrently conducting and targeting their infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States.

105.    As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit.

106.    Upon information and belief, at all times relevant hereto, Defendants in this action had full knowledge of Plaintiff's ownership of the Marks and Patent, including its right to use and license such intellectual property and the goodwill associated therewith.

107.    Defendants' use of the Marks and Patent, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Infringing Goods, is without Plaintiff's consent or authorization.

108.    Defendants are engaging in the above-described illegal infringing and counterfeiting activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights.

109.    If Defendants' intentional infringing and counterfeiting activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

110.    Defendants' payment and financial accounts are being used by Defendants to accept, receive, and deposit profits from Defendants' infringing activities connected to their Seller IDs and any other alias, e-commerce stores, or seller identification names being used and/or controlled by them.

111.    Defendants are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Plaintiff.

112.    Plaintiff is suffering irreparable injury and has suffered substantial damages as a result of Defendants' unauthorized and infringing activities and their wrongful use of Plaintiff's intellectual property rights.

113.    The harm and damage sustained by Plaintiff has been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Infringing Goods.

114.    Defendants have sold their infringing products in competition directly with Plaintiff's genuine products.

115.    Plaintiff should not have any competition from Defendants because Plaintiff never authorized Defendants to use Plaintiff's Marks or Patent.

116.    Plaintiff has no adequate remedy at law.

117.    The harm caused is irreparable.

## COUNT I – TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

118.    Plaintiff incorporates the allegations of paragraphs 1 through 117 of this Complaint as if fully set forth herein.

119.    This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of one or more of the PANDALOON Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale and sale of the Infringing Goods.

120.    Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of one or more of the PANDALOON Marks.

121.    Defendants are continuously infringing and inducing others to infringe one or more of the PANDALOON Marks by using it to advertise, promote, sell, and offer to sell counterfeit and infringing goods.

122.    Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Infringing Goods.

123.    Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

124.    Defendants' above-described illegal actions constitute counterfeiting and infringement of one or more of the PANDALOON Marks in violation of Plaintiff's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

125.    Plaintiff has suffered and will continue to suffer irreparable injury and damages due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined.

126.    If not preliminarily and permanently enjoined, Defendants will continue to wrongfully profit from their illegal activities.

## COUNT II – FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

127.    Plaintiff incorporates the allegations of paragraphs 1 through 117 of this Complaint as if fully set forth herein.

128.    Defendants' Infringing Goods bearing, offered for sale and sold using copies of one or more of the PANDALOON Marks have been widely advertised and offered for sale throughout the United States via their Internet based e-commerce stores.

129.    Defendants' Infringing Goods bearing, offered for sale, and sold using copies of one or more of the PANDALOON Marks are virtually identical in appearance to Plaintiff's genuine goods.

130.    Defendants' Infringing Goods are different in quality from Plaintiff's goods, and are of much lower quality.

131.    Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Infringing Goods.

132.    Defendants, upon information and belief, have used in connection with their advertisement, offer for sale, and sale of their Infringing Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

133.    Defendants have authorized infringing uses of one or more of the PANDALOON Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods.

134.    Defendants have misrepresented to members of the consuming public that the Infringing Goods being advertised and sold by them are genuine, non-infringing goods.

135.    Defendants are using counterfeits and infringements of one or more of the PANDALOON Marks in order to unfairly compete with Plaintiff and others for space within organic search engine results and social media results, thereby jointly depriving Plaintiff of a valuable marketing and educational tool which would otherwise be available to Plaintiff and

reducing the visibility of Plaintiff's genuine goods on the internet and across social media platforms.

136.    Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

137.    Plaintiff has no adequate remedy at law, and has sustained indivisible injury and damage caused by Defendants' concurrent conduct.

138.    Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

### COUNT III – COMMON LAW TRADEMARK INFRINGEMENT

139.    Plaintiff incorporates the allegations of paragraphs 1 through 116117 of this Complaint as if fully set forth herein.

140.    This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Infringing Goods bearing or sold under one or more of the PANDALOON Marks.

141.    Plaintiff is the owner of all common law rights in and to the PANDALOON Marks.

142.    Defendants, upon information and belief, are promoting, and otherwise advertising, distributing, offering for sale, and selling goods bearing infringements of one or more of the PANDALOON Marks.

143.    Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Infringing Goods bearing or sold under one of more of the PANDALOON Marks.

144.    Plaintiff has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' actions.

## COUNT IV –DECEPTIVE OR UNFAIR TRADE PRACTICES IN VIOLATION OF NEW YORK LAW

145.    Plaintiff incorporates the allegations of paragraphs 1 through 117 of this Complaint as if fully set forth herein.

146.    The New York General Business Law ("NYGBL") broadly declares in §349 that "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

147.    The Integrity, Notification, and Fairness in Online Retail Marketplaces for Consumers Act (INFORM Act) became effective on June 27, 2023, with the primary goal of increasing transparency in online marketplace transactions.

148.    The INFORM Act is consumer oriented and its violation results in actions that are deceptive or materially misleading to the reasonable consumer.

149.    The INFORM Act requires online marketplaces to collect, verify, and disclose specific information about high-volume third-party sellers to protect consumers from counterfeit, unsafe, and stolen goods.

150.    The INFORM act requires marketplaces to display the business name, physical address, and contact information on product listing pages or in order confirmations for sellers with gross annual sales of $20,000 within the past two years. This transparency requirement directly addresses consumer protection concerns by enabling buyers to identify and contact sellers, thereby deterring fraudulent activities.

151.    The INFORM Act mandates that online marketplaces collect bank account information, contact information, and tax identification numbers from these sellers.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ NEW YORK ◆ TENNESSEE ◆ NEW YORK

152.    All the Defendants in this action meet the definition of "high-volume third-party sellers" with annual gross revenues of $20,000 or more.

153.    The Defendants in this action violated the INFORM Act by failing to provide the required information or providing false information.

154.    The INFORM Act explicitly grants enforcement authority to the FTC and violations of the INFORM Act are statutorily defined as "unfair or deceptive acts or practices" under Section 5 of the FTC Act.

155.    The FTC's authority encompasses practices that are "likely to mislead" consumers, even if no actual deception occurs; failure to disclose pertinent facts that could materially affect consumer purchasing decisions constitutes a deceptive practice under established FTC precedent.

156.    When marketplace sellers, such as the defendants in this case, violate INFORM Act requirements by failing to provide required information or providing false information, they create the precise consumer harm the Act was designed to prevent. Such violations can mislead consumers about seller identity, impede communication regarding defective products, and facilitate the sale of counterfeit or stolen merchandise.

157.    The Defendants' violations of the INFORM Act serves as a predicate violation for Plaintiff's state law unfair or deceptive practice claims.

158.    The Defendants' violations of the INFORM Act were a proximate cause of harm to Plaintiff because the violations led to sales by Defendants under circumstances where, inter alia, consumers cannot identify sellers or verify their legitimacy; absent required contact information, consumers could not address product defects or seek remedies; non-compliance

with the INFORM Act facilitates criminal activity and counterfeit sales; material omissions about seller identity affect consumer choice.

159.    As a direct and proximate result of defendant's unfair or deceptive trade practices, Plaintiff suffered and will continue to suffer loss of reputation among its purchasers and potential purchasers, and Defendants will continue to unfairly acquire income, profits, and goodwill.

160.    Plaintiff has been damaged.

161.    The damage to Plaintiff is irreparable.

162.    Unless enjoined, Defendants' unfair and deceptive practices will continue to deceive the public and injure competition.

## COUNT V – PATENT INFRINGEMENT

163.    Plaintiff incorporates the allegations of paragraphs 1 through 116117 of this Complaint as if fully set forth herein.

164.    Plaintiff owns all right, title, and interests in, and/or has standing to sue for infringement of U.S. Design Patent No. USD806325S entitled "PET COSTUME" claiming the ornamental features of its pet costumes.

165.    Defendants have infringed and continue to infringe the PANDALOON Design Patent either directly or indirectly through acts of contributory infringement or inducement in violation of 35 U.S.C. § 271, by making, using, selling, importing and/or offering to sell infringing products, namely the infringing and counterfeit products sold under one or more of the PANDALOON Marks.

166.    Defendants' infringing and counterfeit products sold under one or more of the PANDALOON Marks are the same in all material respects.

167.    Defendants' disregard for Plaintiff's patent rights similarly threatens Plaintiff's relationship with potential licensees of this patent.

168.    Defendants will derive a competitive advantage from using Plaintiff's patented design without paying compensation for such use.

169.    Defendants' infringement, contributory infringement and/or inducement to infringe has injured Plaintiff and it, therefore, is entitled to recover damages adequate to compensate it for such infringement, but in no event less than a reasonable royalty.

170.    Defendants' infringement, contributory infringement and/or inducement to infringe has been willful and deliberate because Defendants have notice of or knew of the PANDALOON Design Patent and have nonetheless injured and will continue to injure Plaintiff, unless and until this Court enters an injunction, which prohibits further infringement and specifically enjoins further manufacture, use, sale, importation and/or offer for sale of products that come within the scope of the PANDALOON Design Patent.

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a.    Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116 and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Infringing Goods; from infringing, counterfeiting, or diluting the PANDALOON Marks; from using the PANDALOON Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from falsely

representing themselves as being connected with Plaintiff , through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of defendants, are in any way endorsed by, approved by, and/or associated with Plaintiff; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the PANDALOON Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiff, or in any way endorsed by Plaintiff and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiff's name or trademarks and from otherwise unfairly competing with Plaintiff.

b.       Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiff's request, the applicable governing Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by this Court disable and/or cease facilitating access to the Seller IDs and any other alias seller identification names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods using infringements of the Marks and Patent.

c.       Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that, upon Plaintiff's request, any messaging service and Internet marketplace website operators, administrators, registrar and/or top level domain (TLD) registry for the Seller IDs who are provided with notice of an injunction issued by

this Court identify any e-mail address known to be associated with Defendants' respective Seller IDs.

d.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by this Court permanently remove from the multiple platforms, which include, inter alia, a direct platform, group platform, seller product management platform, vendor product management platform, and brand registry platform, any and all listings and associated images of goods using infringements of the Marks and Patent via the e-commerce stores operating under the Seller IDs, and upon Plaintiff's request, any other listings and images of goods using infringements of the Works associated with any ASIN linked to the same sellers or linked to any other alias seller identification names being used and/or controlled by Defendants to promote, offer for sale and/or sell goods using infringements of the Marks and Patent.

e.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and this Court's inherent authority that, upon Plaintiff's request, Defendants and any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by this Court immediately cease fulfillment of and sequester all goods of each Defendant using infringements of the Marks and Patent in his inventory, possession, custody, or control, and surrender those goods to Plaintiff.

f.      Entry of an Order requiring Defendants to correct any erroneous impression the consuming public may have derived concerning the nature, characteristics, or qualities of

their products, including without limitation, the placement of corrective advertising and providing written notice to the public.

g.    Entry of an Order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C.§ 1117, or, at Plaintiff's election, that Plaintiff be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product sold, as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act.

h.    Entry of an Order requiring Defendant to account to and pay Plaintiff damages for patent infringement in an amount to be determined by the Court pursuant to 35 U.S.C. § 284 which shall in no event be less than a reasonable royalty.

i.    Entry of an award pursuant to the state unfair or deceptive practice statutes sued upon for actual and/or statutory damages, Plaintiff's costs and reasonable attorneys' fees and investigative fees, associated with bringing this action.

j.    Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiff's costs and reasonable attorneys' fees and investigative fees, associated with bringing this action, including the cost of corrective advertising.

k.    Entry of an award pursuant to 35 U.S.C. § 285 of Plaintiff's reasonable attorney's fees.

l.    Entry of an Order that, upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all

funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs, or other alias seller identification or e-commerce store names used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s) and remain restrained until such funds are surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

m.      Entry of an award of pre-judgment interest on the judgment amount.

n.      Entry of an Order for any further relief as the Court may deem just and proper.

DATED: December 9, 2025                    Respectfully submitted,


*/s/ Rachel I. Kaminetzky*
RACHEL I. KAMINETZKY
New York Bar Number: 1059614
rachel.kaminetzky@sriplaw.com
JOEL B. ROTHMAN
New York Bar Number: 2459576
joel.rothman@sriplaw.com

**SRIPLAW, P.A.**
41 Madison Avenue
25th Floor
New York, NY 10010
561.404.4350 – Telephone
561.404.4353 – Facsimile

*Counsel for Plaintiff Pandaloon LLC*