UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PANDALOON LLC,<br><br>    Plaintiff,<br><br>v.<br><br>HEFEI LONGNEW PET PRODUCTS CO., LTD., *et al*,<br><br>    Defendants. | 25 Civ. 10191 (JHR) |

**ORDER GRANTING *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER**

  Plaintiff PANDALOON LLC ("Pandaloon," or "Plaintiff") has filed an *Ex Parte* Application for Entry of Temporary Restraining Order and Order Restraining Transfer of Assets (the "Application") ECF No. 8. Plaintiff moves *ex parte* for entry of a temporary restraining order against Defendants Hefei Longnew Pet Products Co., Ltd., Kunshan Zhongru Pet Products Co., Ltd, LISM Pet Supplies & Pet Store, MenQI Store, My Pet Clothing Store, Puppy Colorful Store, Shop1104760661 Store, YouMe Store Store, DayoneShop, kisuin, MANON ROSA (Delivery 7-18 days), Plauere-us, Sister Amy, guangzhouyichongmaoyiyouxiangongsi, kong09, MG-efforts, and mintam_59 (collectively "the Defendants"), and an order restraining transfer of assets pursuant to 15 U.S.C. § 1116, 35 U.S.C. § 284, Federal Rule of Civil Procedure 65, The All Writs Act, 28 U.S.C. § 1651(a), and this Court's inherent authority.

  Having reviewed the Complaint, ECF No. 1 ("Compl."), the Application, the memorandum in support, ECF No. 9 (the "Memo"), the Declarations of Joel B. Rothman, ECF

1

No. 10 ("Rothman Decl.") and Eugenia Chen, ECF No. 11 ("Chen Decl."), including their exhibits, as well as the governing law, the Court hereby GRANTS the Application.

## BACKGROUND

Plaintiff creates and sells pet costumes under two federally registered trademarks: PANDALOON (standard characters), and a trademark consisting of a three-dimensional configuration of two stacked leaves with the word PANDALOON centered on the top leaf (collectively, the "PANDALOON Marks"). The PANDALOON Marks are associated with the production of high-quality pet costumes and designs, which are fitted to different types of pets. (Chen Decl. ¶ 15).

Plaintiff is the owner of all rights in and to the PANDALOON Marks for "animal apparel; costumes for animals; dog apparel; clothing for animals; clothing for dogs" under International Class 18 as shown in the table below. (Chen Decl. ¶ 16). The PANDALOON Marks are valid and registered on the Principal Register of the United States Patent and Trademark Office. (Chen Decl. ¶ 17).

| Mark | Reg. No. | IC | First Use | First Use in Commerce | Reg. Date |
|---|---|---|---|---|---|
| PANDALOON | 5311455 | 18 | 4/13/2027 | 4/13/2017 | 10/17/2017 |
| 3D PANDALOON Leaf Mark | 6870532 | 18 | 4/13/2017 | 4/13/2017 | 10/11/2022 |

Plaintiff's pet costumes possess an ornamental design that is protected under a design patent and registered with the United States Patent and Trademark Office under U.S. Patent No USD 8,063,25 S entitled "PET COSTUME" (the "PANDALOON Design Patent"). (Chen Decl.

¶ 31). The PANDALOON Design Patent was issued on December 26, 2017, has not expired, and is valid. (Chen Decl. ¶ 33).

Plaintiff alleges that Defendants are promoting, advertising, distributing, selling, and/or offering for sale cheap copies or imitations of Plaintiff's registered trademarks and design patent in interstate commerce that are infringements of Plaintiff's intellectual property rights (the "Infringing Goods") through at least the Internet-based e-commerce stores operating under the Seller IDs. (Chin Decl. ¶ 41).

PANDALOON Marks and the PANDALOON Design Patent have never been licensed to any of the Defendants. (Chen Decl. ¶ 24).

Plaintiff investigated the promotion and sale of infringing versions of the PANDALOON Marks and PANDALOON Design Patent by Defendants to obtain the available payment account data for receipt of funds paid to Defendants for the sale of the Infringing Goods through the Seller IDs. (Chen Decl. ¶¶ 36-46).

Plaintiff or someone under its supervision accessed the e-commerce stores of each Defendant. Plaintiff or someone under its supervision created detailed web page captures and images reflecting each Infringing Good bearing counterfeit and infringements of the PANDALOON Marks and PANDALOON Design Patent for each Defendant. (Chen Decl. ¶ 43; Exhibit 1).

Plaintiff or someone under its supervision reviewed and visually inspected the detailed web page captures and photographs and determined the products were not genuine versions of PANDALOON's goods. (Chen Decl. ¶ 45).

On December 9, 2025, Plaintiff filed its Complaint, ECF No. 1, for willful trademark and patent infringement.

On December 11, 2025, Plaintiff filed its Application. ECF No. 8.

## LEGAL STANDARD

To obtain a Temporary Restraining Order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo,* 403 F.3d 1223, 1225–26 (11th Cir. 2005).

Federal Rule of Civil Procedure 65 provides as follows:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A)    specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B)    the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

*Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing and no longer." *Granny Goose Foods, Inc. v. Bd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

## DISCUSSION

Based on the Application and the Declarations in support thereof, including their exhibits, the Court concludes that the Plaintiff is likely to succeed in showing that Defendants advertise, promote, sell, offer for sale, or distribute counterfeit and infringing products bearing the PANDALOON Marks and the PANDALOON Design Patent, that the products Defendants are

selling and promoting for sale are products that bear Plaintiff's intellectual property, and that the infringement of the trademarks and patent will likely cause Plaintiff to suffer immediate and irreparable injury if a Temporary Restraining Order and Order Restraining Assets is not granted. Specifically, Plaintiff has identified "web pages for each Defendant reflecting each Infringing Good bearing counterfeits and infringements of the PANDALOON MARKS and PANDALOON Design Patent." (Chen Decl. ¶ 43.). "Defendants are using infringements of Plaintiff's intellectual property to initially attract online customers and drive them to Defendants' e-commerce stores operating under the Seller IDs." (*Id.* ¶ 49.). "In so advertising their stores and products, Defendants improperly and unlawfully use reproductions or versions of the PANDALOON Marks or PANDALOON Design Patent without Plaintiff's permission." (*Id.* ¶ 53.).

Plaintiff has demonstrated that immediate and irreparable loss, damage, and injury will result to Plaintiff and to consumers before Defendants can be heard in opposition unless Plaintiff's request for *ex parte* relief is granted because a) Defendants own or control e-commerce stores via Alibaba.com, Aliexpress.com, Amazon.com, dhgate.com, and eBay.com which advertise, promote, offer for sale, and sell Infringing Goods bearing the Plaintiff's trademarks and patent in violation of Plaintiff's rights; b) there is good cause to believe that more Infringing Goods bearing Plaintiff's trademarks and patent will appear in the marketplace, that consumers are likely to be misled, confused, or disappointed by the quality of these products, and that Plaintiff may suffer loss of sales for its high-quality genuine pet costumes; and c) there is good cause to believe that if Plaintiff proceeds to put Defendants on notice of this Application, Defendants can easily and quickly transfer or modify e-commerce store registration data and content, change payment accounts, redirect consumer traffic to other seller identification names,

and transfer assets and ownership of the Seller IDs, thereby thwarting Plaintiff's ability to obtain meaningful relief.

The potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a Temporary Restraining Order is issued is far outweighed by the potential harm to Plaintiff, its reputation, and its goodwill as a manufacturer and distributor of quality products, if such relief is not issued. *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2004) (affirming that "loss of reputation, good will, and business opportunities" constitutes "irreparable harm"). Plaintiff has attested that "[l]oss of quality control over goods being sold in violation of the PANDALOON Marks and PANDALOON Design Patent," (Chen Decl. at ¶ 78), will affect its reputation because "[c]onsumers, who mistakenly believe that the Infringing Goods he or she has purchased originated from PANDALOON will come to believe that PANDALOON offers low quality products." (*Id*. at ¶ 79.).

The public interest favors issuance of the Temporary Restraining Order to protect Plaintiff's trademarks and patent interests and protect the public from being defrauded by the palming off of counterfeit goods as Plaintiff's genuine goods. Compl. ¶ 105; *Laboratorios Rivas, SRL v. Ugly & Beauty, Inc*., No. 11 Civ. 5980 (RA) (JLC), 2013 WL 5977440, at *12 (S.D.N.Y. Nov. 12, 2013) ("[T]he public has an interest in being able to rely on the quality of the products bearing the Plaintiff's registered trademarks."), *report and recommendation adopted*, No. 11 Civ. 5980 (RA) (JLC), 2014 WL 112397 (S.D.N.Y. Jan. 8, 2014). Further, pursuant to 15 U.S.C. §1117(a), Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sale of goods bearing or using counterfeits and infringements of Plaintiff's trademarks. *See Levi Strauss & Co. v. Sunrise Int'l Trading Inc*., 51

6

F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992).

Under the Patent Act, Plaintiff may be entitled to compensation for the infringement, no less than a reasonable royalty for the use made of the invention by Defendants, together with the interest and cost fixed by the Court. *See* 35 U.S.C. § 284. Also, Plaintiff may be entitled "to the extent of the total profit" obtained by Defendants for "apply[ing] its registered design patents or any colorable imitation thereof" to Defendant's products "for purpose of sale" or "sells and exposes for sale." *See* 35 U.S.C. § 289.

In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark and patent laws, Plaintiff has good reason to believe that Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained. Accordingly, having considered the Complaint, the Application, the supporting Declarations and exhibits, and the Memo, and having found good cause, the Court hereby GRANTS the Application, and a Temporary Restraining Order is entered as follows:

## **TEMPORARY RESTRAINING ORDER**

1. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby restrained and enjoined until further Order of this Court:

    a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing or using one or more of the PANDALOON Marks, or any confusingly

        similar trademarks, other than those actually manufactured or distributed by Plaintiff; and

    b.    From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing and/or using one or more of the PANDALOON Marks, or any confusingly similar trademark; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the PANDALOON Marks, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any Defendant, including, but not limited to, any assets held by or on behalf of any Defendant; and

    c.    From making, using, selling, importing and/or offering to sell products that practice the '325 Patent.

2.    Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of one or more of the PANDALOON Marks, or any confusingly similar trademarks and the '325 Patent, on or in connection with all Internet-based e-commerce stores owned and operated or controlled by them, including the Internet-based e-commerce stores operating under the Seller IDs. This Order is limited to Defendants' listings using one or more of the PANDALOON Marks, or any

confusingly similar trademarks and the '325 Patent, on or in connection with all Internet- based e-commerce stores owned and operated or controlled by them, including the Internet-based e-commerce stores operating under the Seller IDs, and does not apply to Defendants' entire e-commerce stores.

3.  Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of one or more of the PANDALOON Marks, or any confusingly similar trademarks, within domain name extensions, metatags or other markers within website source code, from use on any web page (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and from any other form of use of such terms that are visible to a computer user or that serves to direct computer searches to Internet-based e-commerce stores registered, owned, or operated by any Defendant, including the Internet-based e-commerce stores operating under the Seller IDs.

4.  Each Defendant shall not transfer ownership of the Seller IDs during the pendency of this action, or until further Order of the Court.

5.  Each Defendant shall continue to preserve copies of all computer files relating to the use of any of the Seller IDs and shall take all steps necessary to retrieve computer files relating to the use of the Seller IDs that may have been deleted before entry of this Order.

6.  Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to Alibaba.com, Aliexpress.com, Amazon.com, Amazon Payments, Inc. ("Amazon"), dhgate.com ("dhgate"), eBay.com ("eBay"),  PayPal Holdings, Inc. ("PayPal"),

9

Payoneer, Inc. ("Payoneer"), LianLian, Klarna, WorldFirst, Stripe, Inc. and/or Stripe Payments Company ("Stripe"), and their related companies and affiliates shall, to the extent not already done, (i) immediately identify all financial accounts and/or sub-accounts, associated with the Internet-based e-commerce stores operating under each Defendant, store numbers, infringing product numbers, and/or the e-mail addresses identified for each Defendant, as well as any other accounts of the same customer(s); (ii) identify all other accounts which transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this Order; (iii) restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; and (iv) immediately divert those restrained funds to a holding account for the trust of the Court.

7. Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms receiving notice of this Order, including but not limited to Alibaba, Aliexpress, Amazon, dhgate, eBay, PayPal, Payoneer, LianLian, Klarna, WorldFirst, Stripe, and their related companies and affiliates, shall further, to the extent not already done, provide Plaintiff's counsel with all data that details: (i) an accounting of the total funds restrained and identify the financial account(s) and sub-account(s) which the restrained funds are related to; (ii) the account transactions related to all funds transmitted into the financial account(s) and sub-account(s) which have been restrained; (iii) the historical sales for Defendants' listings that are alleged to infringe Plaintiff's trademarks and patent; and (iv) the true identities along with complete contact information including email addresses for each Defendant.

8. No funds restrained by this Order shall be transferred or surrendered by any Defendant, financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website for any purpose (other than in connection with a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court.

9. No Defendant whose funds are restrained by this Order may transfer said funds in possession of any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website without the express authorization of this Court.

10. Any Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out herein.

11. This Order shall apply to the Seller IDs, associated e-commerce stores and websites, and any other seller identification names, e-commerce stores, websites, or financial accounts which are being used by Defendants for the purpose of counterfeiting the PANDALOON Marks and/or unfairly competing with the Plaintiff and/or infringing the '325 Patent.

12. This Order shall remain in effect until **fourteen (14) days from the date of this Order** or until such further date as set by the Court or stipulated by the Parties.

## BOND TO BE POSTED

13. Pursuant to 17 U.S.C § 503 (a)(3) and Federal Rule of Civil Procedure 65(c), Plaintiff shall post a bond in the amount of Five Thousand Dollars and Zero Cents ($5,000.00) as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court, and in the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

**NOTICE TO DEFENDANTS**

14. After Plaintiff's counsel has received confirmation from the financial institutions regarding the funds restrained as directed herein, Plaintiff shall provide notice of this Order to Defendants by serving copies of the Complaint, summons, and this Order on each Defendant by e-mail and/or online contact form or other means of electronic contact provided by the e-commerce stores operating under the Seller IDs, and by providing a copy of this Order by e-mail to the marketplace platform for each of the Seller IDs so that the marketplace platform, in turn, notifies each Defendant of the Order.

15. Plaintiff shall also post copies of the Complaint, summons, the Application, this Order, and all other documents filed in this action on the website located at the URL www.sriplaw.com/notice and shall provide the address to the website to Defendants via email/online contact form.

16. Plaintiff shall continue to provide notice of these proceedings and copies of the documents on file in this matter to Defendants by regularly updating the website located at the URL www.sriplaw.com/notice, or by other means reasonably calculated to give notice that are permitted in advance by the Court.

17. Additionally, for the purpose of providing additional notice of this proceeding, and all other pleadings, orders, and documents filed herein, the owners, operators and/or administrators of the Internet marketplace websites and/or financial institutions, payment processors, banks, escrow services, money transmitters, and marketplace platforms, shall, at Plaintiff's request, provide Plaintiff's counsel with any e-mail address known to be associated with Defendants' respective Seller IDs.

18.  For the avoidance of doubt, the aforementioned forms of service do not constitute proper service of the summons and Complaint.  *See* Fed. R. Civ. P. 4.  If Plaintiff intends to seek alternative service, *see* Memo. at 29, it shall file its motion by **December 18, 2025**.

19.  Defendants shall have five (5) business days to comply with this Temporary Restraining Order following notice.

20.  Any response to Plaintiff's motion for preliminary injunction must be filed and served on Plaintiff's counsel by **December 22, 2025**.

21.  Plaintiff shall file any reply memorandum on or before **December 23, 2025**.  By the same date, Plaintiff shall file (and submit in Word format by email to ReardenNYSDChambers@nysd.uscourts.gov) a proposed preliminary injunction order.

22.  The above dates may be revised upon stipulation by all parties and approval of this Court.

## PRELIMINARY INJUNCTION

A telephonic hearing is set before this Court for **December 24, 2025** at **10:00 a.m.**, at which time Defendants and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on Plaintiff's requested Preliminary Injunction.  Meeting information will be circulated to the public and to counsel in due course.

23.  Defendants are hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116, 35 U.S.C. § 284, Federal Rule of Civil Procedure 65, The All Writs Act, 28 U.S.C. § 1651(a), and this Court's inherent authority.

24. The Court also GRANTS Plaintiff's application for leave to file excess pages. ECF No. 12.

25. The Clerk of Court is directed to terminate ECF Nos. 8 and 12.

**SO ORDERED** this 13th day of December, 2025 at 3:08 p.m.

*Jennifer H. Rearden*
HONORABLE JENNIFER H. REARDEN
UNITED STATES DISTRICT JUDGE